1            UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3                 SAN JOSE DIVISION

4

5

  ADAPTIX, INC.,                    )  C-13-01776 PSG
6                                    )  AND RELATED CASES
                 PLAINTIFF,          )
7                                    )  SAN JOSE, CALIFORNIA
           VS.                       )
8                                    )  AUGUST 7, 2014
  APPLE, INC., ET AL,                )
9                                    )  PAGES 1-29
                 DEFENDANTS.         )
10  _____   __   )
                                     )
11  AND RELATED CASES.               )
                                     )
12  _____        )

13                TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE PAUL S. GREWAL
14           UNITED STATES MAGISTRATE JUDGE

15  A P P E A R A N C E S:

16  FOR PLAINTIFF          BANYS, P.C.
    ADAPTIX:               BY:  RICHARD CHENG-HONG LIN
17                         1032 ELWELL COURT, SUITE 100
                           PALO ALTO, CALIFORNIA  94303
18
                           HAYES, MESSINA, GILMAN & HAYES
19                         BY:  JAMES J. FOSTER (BY PHONE)
                                MICHAEL J. ERCOLINI (BY PHONE)
20                         200 STATE STREET, 6TH FLOOR
                           BOSTON, MASSACHUSETTS  02109
21
                   APPEARANCES CONTINUED ON NEXT PAGE
22

23  OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                CERTIFICATE NUMBER 9595
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER

```
 1

 2      APPEARANCES (CONTINUED)

 3

 4      FOR DEFENDANT          WILMER, CUTLER, PICKERING,
        APPLE:                 HALE AND DORR
 5                             BY:  MARK D. SELWYN
                                    CRAIG E. DAVIS
 6                             950 PAGE MILL ROAD
                               PALO ALTO, CALIFORNIA  94304
 7
                               BY:  JONATHAN L. HARDT (BY PHONE)
 8                             1875 PENNSYLVANIA AVENUE, N.W.
                               WASHINGTON, D.C.  20006
 9

10      FOR DEFENDANT          WILMER, CUTLER, PICKERING,
        VERIZON:               HALE AND DORR
11                             BY:  GEOFFREY M. GODFREY
                                    MARK D. FLANAGAN
12                             950 PAGE MILL ROAD
                               PALO ALTO, CALIFORNIA  94304
13

14      FOR DEFENDANT          AKIN, GUMP, STRAUSS, HAUER & FELD
        AT&T AND HTC:          BY:  FRED I. WILLIAMS
15                             300 WEST 6TH STREET, SUITE 1900
                               AUSTIN, TEXAS  78701
16

17      FOR DEFENDANT          CADWALADER, WICKERSHAM & TAFT
        AT&T MOBILITY:         BY:  CHRISTOPHER A. HUGHES (BY PHONE)
18                             1 WORLD FINANCIAL CENTER
                               NEW YORK, NEW YORK  10281
19

20      FOR DEFENDANT          BAKER BOTTS
        T-MOBILE:              BY:  DOUGLAS M. KUBEHL
21                             2001 ROSS AVENUE
                               DALLAS, TEXAS 75201
22

23

24

25
```

```
1       SAN JOSE, CALIFORNIA                    AUGUST 7, 2014

2                       P R O C E E D I N G S

3           (COURT CONVENED AT 10:24 A.M.)

4               THE COURT:  MR. RIVERA, WOULD YOU CALL THE NEXT CASE,

5       PLEASE?

6               THE CLERK:  YES, YOUR HONOR.

7           CALLING ADAPTIX, INC., VERSUS APPLE, INC., ET AL, CASE

8       NUMBER CV-13-1776 PSG, AND RELATED CASES, MATTER ON FOR

9       DEFENDANTS' MOTION TO STRIKE PORTIONS OF DR. MICHAEL

10      CALOYANNIDES'S EXPERT REPORTS.

11          COUNSEL, PLEASE STATE YOUR APPEARANCES.

12              MR. LIN:  GOOD MORNING, YOUR HONOR.  RICHARD LIN

13      APPEARING ON BEHALF OF ADAPTIX.

14              THE COURT:  MR. LIN, GOOD MORNING.  WELCOME.

15              MR. SELWYN:  GOOD MORNING, YOUR HONOR.  MARK SELWYN

16      AND CRAIG DAVIS FROM WILMER, HALE ON BEHALF OF APPLE.

17              MR. GODFREY:  GOOD MORNING, YOUR HONOR.

18      GEOFF GODFREY AND MARK FLANAGAN ON BEHALF OF VERIZON.

19              THE COURT:  GOOD MORNING TO EACH OF YOU.

20              MR. WILLIAMS:  GOOD MORNING, YOUR HONOR.

21      FRED WILLIAMS FOR HTC AND AT&T.

22              THE COURT:  MR. WILLIAMS, GOOD MORNING.

23          AND ON THE TELEPHONE, I UNDERSTAND WE HAVE A NUMBER OF

24      ATTORNEYS AS WELL.  WOULD YOU LIKE TO STATE YOUR APPEARANCES,

25      PLEASE?
```

1          MR. FOSTER:  YES.  FOR PLAINTIFF, JAMES FOSTER.

2          THE COURT:  MR. FOSTER, GOOD MORNING.

3      IS MR. ERCOLINI ALSO ON THE LINE?

4          MR. ERCOLINI:  YES, I AM PRESENT.

5          THE COURT:  ALL RIGHT.  GOOD MORNING TO YOU, SIR.

6      MR. HUGHES, MR. HARDT, I UNDERSTAND YOU'RE ALSO ON THE

7   LINE.  IS THAT CORRECT?

8          MR. HUGHES:  YES, YOUR HONOR.  CHRISTOPHER HUGHES

9   FROM CADWALADER IN NEW YORK FOR AT&T ON THE LINE.  GOOD

10  MORNING.

11         THE COURT:  GOOD MORNING.

12     MR. HARDT, ARE YOU THERE AS WELL?

13         MR. HARDT:  YES, YOUR HONOR.  GOOD MORNING.

14         THE COURT:  GOOD MORNING.

15     AND MR. KUBEHL, I UNDERSTAND YOU'RE ALSO JOINING US.  AM I

16  RIGHT?

17         MR. KUBEHL:  YES, YOUR HONOR.  GOOD MORNING.

18         THE COURT:  GOOD MORNING.  WELCOME.

19     ALL RIGHT.  WELL, I HAVE RECEIVED AND REVIEWED YOUR

20  SUBMISSIONS IN THE VARIOUS CASES THAT HAVE BEEN NOTED AS

21  PRESENTED TO ME HERE THIS MORNING.

22     I UNDERSTAND WE HAVE A MOTION TO STRIKE BROUGHT BY THE

23  DEFENDANTS, AND AM I RIGHT IN UNDERSTANDING THAT EACH OF THE

24  DEFENDANTS WHO HAS APPEARED IS JOINING IN THIS MOTION AND WE

25  HAVE ONE COMMON MOTION TO RESOLVE?

1           MR. SELWYN:  THAT'S CORRECT, YOUR HONOR.

2           THE COURT:  OKAY.  TERRIFIC.

3       ALL RIGHT.  WELL, THIS IS A MOTION BROUGHT BY THE

4   DEFENDANTS, SO I'LL START WITH WHOMEVER WANTS TO SPEAK TO THIS

5   ISSUE.

6           MR. SELWYN, YOU'RE STANDING, SO I'M ASSUMING THAT'S YOU.

7           MR. SELWYN:  GOOD MORNING, YOUR HONOR.

8           THE COURT:  GOOD MORNING.

9           MR. SELWYN:  YOUR HONOR, YOU HAD PREVIOUSLY FRAMED

10  THE LEGAL QUESTION FOR THIS TYPE OF MOTION AS FOLLOWS:  HAS THE

11  EXPERT PERMISSIVELY SPECIFIED THE APPLICATION OF A DISCLOSED

12  THEORY OR HAS THE EXPERT IMPERMISSIBLY SUBSTITUTED A NEW THEORY

13  ALTOGETHER?

14          THE COURT:  THAT SOUNDS LIKE SOMETHING I WOULD SAY.

15      GO AHEAD, MR. SELWYN.

16          MR. SELWYN:  AND IN THIS CASE IT APPEARS, BASED ON

17  ADAPTIX'S LETTER BRIEF, THAT THERE'S NO DISPUTE TO THE ANSWER

18  TO THAT QUESTION.  ADAPTIX CONCEDES THAT MODE 2 WAS THE ONLY

19  DISCLOSED INFRINGEMENT THEORY FOR EVERY ONE OF THE ASSERTED

20  APPARATUS CLAIMS AND THAT IT NEVER DISCLOSED ANY THEORY

21  RELATING TO MODE 3 FOR THESE CLAIMS, MUCH LESS THE NEW MODE 3

22  THEORY ON WHICH ITS EXPERT NOW PROCEEDS.

23          THE COURT:  MR. SELWYN, MAY I JUST INTERRUPT YOU AND

24  ASK, I TAKE IT THERE'S NO DISPUTE MODE 1 IS OUT?  WE'RE NOT

25  TALKING ABOUT MODE 1, AND BOTH SIDES AGREE WITH THAT?

1          MR. SELWYN:  YES, THAT'S CORRECT.

2          THE COURT:  OKAY.  GO AHEAD.

3          MR. SELWYN:  IN ADDITION, ADAPTIX CONCEDES IN ITS

4    BRIEF THAT THE MODE 3 THEORY ON WHICH ITS EXPERT NOW PROCEEDS

5    CANNOT BE FOUND ANYWHERE IN ITS INFRINGEMENT CONTENTIONS.

6          SO THIS IS A CASE WHERE THERE'S NO DISPUTE THAT THE

7    CHALLENGE TO THE INFRINGEMENT THEORIES ARE NEW, THEY'RE MAKING

8    THEIR APPEARANCE FOR THE FIRST TIME IN THE EXPERT REPORT, AND

9    THE EXPERT IS NOT MERELY APPLYING A THEORY DISCLOSED IN THE

10   INFRINGEMENT CONTENTIONS.

11         THE COURT:  MR. SELWYN, AM I CORRECT IN UNDERSTANDING

12   THAT YOU ARE NOT CHALLENGING THE EXPERT'S THEORIES AS TO THE

13   METHOD CLAIMS IN MODE 3?  IS IT FAIR TO SAY THAT THOSE THEORIES

14   WERE DISCLOSED IN CONTENTIONS, AND WHILE YOU DISPUTE THE

15   SUBSTANCE OF THEM, YOU'RE NOT HERE TO STRIKE THEM?

16         MR. SELWYN:  NO, WE ARE.  WE ARE DISPUTING THE NEW

17   ASPECT, THE NEW THEORY OF MODE 3 THAT'S BEING ADVANCED FOR

18   THOSE CLAIMS.

19         THE COURT:  FAIR ENOUGH.  WOULD YOU AT LEAST AGREE

20   THAT THE CONTENTIONS DID DISCLOSE SOME THEORY REGARDING MODE 3

21   AND THE METHOD CLAIMS?

22         MR. SELWYN:  WITH RESPECT TO THE METHOD CLAIMS,

23   THAT'S CORRECT --

24         THE COURT:  OKAY.

25         MR. SELWYN:  -- THE VERY DIFFERENT THEORY THAT THE

1    EXPERT NOW PROCEEDS ON.

2         THE EXPERT HAS ABANDONED THE THEORY THAT'S IN THE

3    INFRINGEMENT CONTENTIONS WITH RESPECT TO THE METHOD CLAIMS FOR

4    MODE 3.

5              THE COURT:  OKAY.  GO AHEAD.

6              MR. SELWYN:  SO ALL OF THE CASE LAW, INCLUDING THE

7    CASE LAW CITED BY ADAPTIX, SAYS THAT UNDER THESE CIRCUMSTANCES

8    WHERE THE THEORIES ARE INDISPUTABLY NEW OR THEY'RE MAKING THEIR

9    APPEARANCE FOR THE FIRST TIME IN THE EXPERT REPORT, AS A MATTER

10   OF UPHOLDING THE PATENT LOCAL RULES, THE NEW THEORY SHOULD BE

11   STRUCK.

12        HAVING ADMITTED THAT THE THEORIES ARE NEW, ADAPTIX DEVOTES

13   ITS LETTER BRIEF TO TRYING TO JUSTIFY WHY ITS EXPERTS SHOULD,

14   NOTWITHSTANDING THE PATENT LOCAL RULES AND NOTWITHSTANDING THE

15   LATE STAGE OF THIS CASE, BE ALLOWED TO ASSERT NEW THEORIES.

16        FIRST, ADAPTIX ARGUES THAT THE DEFENDANTS WERE AWARE THAT

17   ADAPTIX ASSERTED INFRINGEMENT OF METHOD CLAIMS BASED ON MODE 3,

18   AND THAT SHOULD SUFFICE.

19        THAT HAS THE LOGIC, RESPECTFULLY, COMPLETELY BACKWARDS.

20   THE PATENT LOCAL RULES REQUIRE CONTENTIONS TO BE MADE ON A

21   CLAIM-BY-CLAIM, LIMITATION-BY-LIMITATION BASIS, AND BECAUSE

22   ADAPTIX ASSERTED MODE 3 ONLY FOR THE METHOD CLAIMS AND NOT FOR

23   THE APPARATUS CLAIMS, THE DEFENDANTS DREW THE ONLY NORMAL AND

24   REASONABLE AND LOGICAL CONCLUSION, NAMELY, THAT MODE 2 AND NOT

25   MODE 3 WAS ASSERTED FOR THE APPARATUS CLAIMS.

1    NEXT, ADAPTIX ARGUES THAT BECAUSE IT DID NOT INCLUDE AN

2  EXPLICIT, QUOTE, "DISCLAIMER" IN ITS INFRINGEMENT CONTENTIONS

3  THAT IT WAS NOT ACCUSING MODE 3 OF INFRINGEMENT OF THE

4  APPARATUS CLAIMS, THE DEFENDANTS SHOULD HAVE UNDERSTOOD THAT IT

5  WAS.

6    AGAIN, WITH RESPECT, IN ADVANCING THAT ARGUMENT, ADAPTIX

7  REALLY THUMBS ITS NOSE AT THE PATENT LOCAL RULES AND TURNS THE

8  PURPOSE OF INFRINGEMENT CONTENTIONS ON THEIR HEAD.

9    THE IDEA THAT A PLAINTIFF COULD PURSUE AN UNDISCLOSED

10  THEORY FOR AN ASSERTED CLAIM, UNLESS IT WAS DISCLAIMED IN THE

11  CONTENTIONS, WOULD FUNDAMENTALLY UNDERMINE THE CRYSTALIZING

12  PURPOSE OF CONTENTIONS.  WHAT IT WOULD ALLOW A PLAINTIFF TO DO,

13  AND THAT'S EXACTLY WHAT HAS HAPPENED HERE, IS CREATE THE

14  IMPRESSION THAT THEIR INFRINGEMENT THEORY IS ONE THING, ABANDON

15  THAT, AND PURSUE SOMETHING ELSE FOR THE FIRST TIME IN THE

16  EXPERT REPORT.

17    IT BEARS EMPHASIS HERE THAT DEFENDANTS WERE AGGRESSIVE IN

18  PRESSING ADAPTIX TO DISCLOSE ALL ITS INFRINGEMENT THEORIES FOR

19  EACH ASSERTED CLAIM.  THIS IS NOT A CASE WHERE THE DEFENDANTS

20  LAID QUIETLY BEHIND THE PROVERBIAL LOG, AS SOME OF THE CASES

21  SAY.

22    LET ME JUST GIVE YOUR HONOR ONE EXAMPLE.  IN JANUARY AFTER

23  THE MARKMAN RULING, THE DEFENDANTS WROTE COLLECTIVELY TO

24  ADAPTIX TO REPEAT CONCERNS THAT WE HAD HAD ABOUT INFRINGEMENT

25  CONTENTIONS AND, AMONG OTHER THINGS, THE LETTER REQUESTED,

1    QUOTE, "THAT ADAPTIX PROMPTLY PROVIDE AMENDED INFRINGEMENT

2    CONTENTIONS NO LATER THAN JANUARY 31ST, 2014, AND SET FORTH IN

3    DETAIL ALL OF ADAPTIX'S INFRINGEMENT THEORIES IN A MANNER THAT

4    ADDRESS THE ABOVE-REFERENCED DEFICIENCIES PREVIOUSLY IDENTIFIED

5    AND APPLY THE COURT'S CONSTRUCTION."

6        AND A WEEK LATER WE RECEIVED AN E-MAIL FROM ADAPTIX SAYING

7    "ADAPTIX AGREES TO YOUR REQUEST AND WILL PROVIDE ITS METHOD

8    INFRINGEMENT CONTENTIONS BY THE 31ST."

9        THE COURT:  AND IF I REMEMBER CORRECTLY, MR. SELWYN,

10   MY CLAIM CONSTRUCTION ORDER CAME OUT SOMETHING LIKE DECEMBER,

11   MID-DECEMBER OF LAST YEAR; CORRECT?

12       MR. SELWYN:  CORRECT, THE END OF DECEMBER.

13       IN THOSE AMENDED INFRINGEMENT CONTENTIONS FROM THE END OF

14   JANUARY, AGAIN, WHICH FOLLOWED YOUR HONOR'S MARKMAN RULING AND

15   WHICH ADAPTIX AGREED WOULD ACCOUNT FOR THE COURT'S MARKMAN

16   RULING, ADAPTIX DID NOT INCLUDE ANY ASSERTION OF MODE 3 FOR THE

17   APPARATUS CLAIMS.

18       TO THE CONTRARY.  WHAT ADAPTIX DID INSTEAD WAS EXPANDED

19   ITS CONTENTIONS FOR MODE 2 FOR THE APPARATUS CLAIMS.

20       SO THE SUGGESTION THAT'S NOW BEING ADVANCED THAT THE

21   DEFENDANTS SHOULD HAVE SOMEHOW KNOWN OR CONCLUDED THAT, IN

22   FACT, MODE 3 WAS ASSERTED FOR THE APPARATUS CLAIMS SIMPLY DOES

23   NOT STAND TO REASON.

24       AS FOR THE SECOND NEW THEORY, ADAPTIX ARGUES THAT A

25   CONSTRUCTION PROPOSED FOR THE "SELECTING" TERM BY DEFENDANTS IN

1    MARKMAN LAST FALL SOMEHOW GAVE RISE TO THE NEED FOR ITS EXPERT

2    NOW TO CHANGE ADAPTIX'S THEORY OF "SELECTION" UNDER MODE 3.

3           THAT DOESN'T MAKE ANY SENSE, EITHER, AND CANNOT EXCUSE

4    ADAPTIX IGNORING THE PATENT LOCAL RULES.

5           THE COURT:  MR. SELWYN, CAN YOU JUST WALK ME

6    THROUGH -- AND I'LL OBVIOUSLY GIVE PLAINTIFFS A SIMILAR

7    OPPORTUNITY -- WALK ME THROUGH THE, AS YOU SEE IT, NEW THEORY

8    WITH RESPECT TO THIS TERM AS COMPARED TO THE EARLIER THEORY.

9           MR. SELWYN:  CERTAINLY.  THE OLD THEORY FOR MODE 3

10   WAS THAT THE U.E., THE HANDSET, CHOSE ALL SUBBANDS AND THAT

11   THAT WAS SATISFYING THE SELECTION TERM.

12          THE NEW THEORY IS THAT THE U.E.S CHOOSE SOME SUBBANDS AS

13   CANDIDATE SUBCARRIERS AND DON'T CHOOSE OTHER SUBBANDS AS

14   CANDIDATES SUBCARRIERS.

15          SO WHEREAS BEFORE THEY HAD SAID THAT THE CHOICE, THE

16   SELECTION OF "ALL" SATISFIES "SELECTING," NOW THEY'RE, FRANKLY,

17   SUBMITTING, PROFFERING A THEORY THAT CONTRADICTS THAT AND

18   SAYING WHAT'S REALLY HAPPENING HERE IS THE SELECTION OF SOME.

19          THE COURT:  AND I'M SORRY FOR INTERRUPTING YOU OVER

20   AND OVER AGAIN.

21          AS I UNDERSTAND IT, THE CLAIM CONSTRUCTION I ISSUED BACK

22   IN DECEMBER SIMPLY CONFIRMED, WITH RESPECT TO THIS TERM, THAT

23   "SELECTING" MEANT "CHOOSING;" RIGHT?

24          SO I'M JUST STRUGGLING TO UNDERSTAND WHERE THIS, WHERE

25   THIS CHANGE, AS YOU'VE DESCRIBED IT, COULD BE GROUNDED OR

1     JUSTIFIED BY MY CONSTRUCTION OR MY CHOICE OF ONE CONSTRUCTION

2     VERSUS ANOTHER.

3               MR. SELWYN:  IT CAN'T, AND HERE'S WHY:  ADAPTIX WON

4     ITS CONSTRUCTION AND DEFENDANTS LOST.  THE COURT ADOPTED

5     VERBATIM ADAPTIX'S PROPOSED CONSTRUCTION FOR THE "SELECTING"

6     TERM.

7               THE COURT:  I THOUGHT THAT'S WHAT I WAS DOING, BUT I

8     WANTED TO SEE IF YOU HAD A DIFFERENT VIEW OF THAT.

9               MR. SELWYN:  NO, NO.  YOUR HONOR REJECTED THE

10    CONSTRUCTION THAT THE DEFENDANTS HAD PROPOSED.

11        SO THERE'S ABSOLUTELY NOTHING THAT HAPPENED IN MARKMAN

12    THAT SHOULD HAVE GIVEN RISE TO A NEW THEORY.

13        BUT LET'S JUST ASSUME THAT SOMETHING ACTUALLY DID HAPPEN

14    IN MARKMAN THAT WOULD HAVE GIVEN RISE FOR ADAPTIX TO THINK OF A

15    NEW THEORY.

16        IF THAT'S THE CASE, IT SHOULD HAVE BEEN DISCLOSED LONG,

17    LONG AGO, NOT FOR THE FIRST TIME INDISPUTABLY IN THE EXPERT'S

18    REPORT.

19        AND THIRD, AS I MENTIONED, ADAPTIX DID, IN FACT, SERVE

20    AMENDED CONTENTIONS AFTER MARKMAN IN WHICH IT REPRESENTED THAT

21    IT WAS ACCOUNTING FOR MARKMAN, BUT NEVER INCLUDED THIS NEW

22    THEORY.  THAT ALONE SHOULD BE ENOUGH TO SHOW THAT THERE'S NO

23    JUSTIFICATION FOR THIS LATE THEORY.

24        BUT LET ME MAKE ONE OTHER POINT HERE.

25        YOUR HONOR, IN OTHER CASES, HAS NOTED THAT IF THE

1    DEFENDANTS ARE NOT SATISFIED WITH INFRINGEMENT CONTENTIONS, ONE

2    DISCOVERY TOOL AVAILABLE IS TO SERVE SOME INTERROGATORIES, ASK

3    FOR WHATEVER ADDITIONAL DETAIL YOU WANT.

4         SO AS A BELT AND SUSPENDERS APPROACH, THAT'S WHAT WE DID

5    HERE, AND IN OUR FIFTH COMMON INTERROGATORY, WE ASKED ADAPTIX

6    TO IDENTIFY FOR EACH CLAIM LIMITATION WHETHER IT CONTENDED IT

7    WAS ESSENTIAL OR NECESSARY TO THE STANDARD.

8         THE RESPONSE WE GOT BACK WAS, QUOTE, "INFORMATION

9    REGARDING ALL THE REASONS, EVIDENCE, CLAIMS, CONTENTIONS,

10   ANALYSIS, THEORIES OF INFRINGEMENT, SUPPORT, AND IDENTIFICATION

11   OF THE RELEVANT PRODUCTS TO THE VARIOUS DEFENDANTS CAN BE

12   DERIVED OR ASCERTAINED FROM THE AFOREMENTIONED FORTHCOMING

13   AMENDED INFRINGEMENT CONTENTIONS," THE ONES THAT FOLLOWED

14   MARKMAN.

15        THERE'S NO WAY -- THERE'S NO WAY TO RECONCILE THAT

16   SWEEPING REPRESENTATION WITH ADAPTIX'S CURRENT POSITION.

17        FURTHER, WE HONED IN ON MODE 3 IN OUR INTERROGATORIES ONCE

18   IT BECAME CLEAR THAT ADAPTIX WAS PURSUING MODE 3 WITH RESPECT

19   TO THE METHOD CLAIMS, AND ON MARCH 10TH OF THIS YEAR, WE SERVED

20   AN INTERROGATORY SPECIFIC TO MODE 3.  THAT INTERROGATORY READ:

21   "IDENTIFY ALL EVIDENCE THAT YOU CONTEND SHOWS THAT THE ACCUSED

22   PRODUCTS, WHEN EMPLOYING APERIODIC MODES 3.0 AND 3.1 'SELECT A

23   SET OF CANDIDATE SUBCARRIERS' AS THAT PHRASE HAS BEEN CONSTRUED

24   BY THE COURT."

25        IN RESPONSE, ON APRIL 14TH ADAPTIX WROTE, "ADAPTIX HAS

1    ALREADY PROVIDED CLAIM CHARTS," ALLEGING -- "SETTING FORTH IN

2    DETAIL AND WITH CITATIONS TO SPECIFIC EVIDENCE, INFRINGEMENT BY

3    DEFENDANTS OF THE PATENTS-IN-SUIT.  THOSE CLAIM CHARTS

4    SPECIFICALLY ADDRESS THE COURT'S CONSTRUCTION OF THE 'SELECT A

5    SET OF CANDIDATE SUBCARRIERS' TERM."

6         AGAIN, THERE'S NO WAY TO RECONCILE THAT INTERPRETATION

7    WITH ADAPTIX'S CURRENT POSITION.

8         SO TIME AND AGAIN, ADAPTIX SAID IT HAD TAKEN THE COURT'S

9    CONSTRUCTION INTO ACCOUNT AND PROVIDED CLAIM CHARTS SETTING

10   FORTH ALL THE THEORIES AND ALL THE SPECIFIC EVIDENCE.

11        LET ME TURN NOW TO THE ISSUE OF PREJUDICE.  FIRST OF ALL,

12   MANY COURTS IN THIS DISTRICT REQUIRE NO SHOWING OF PREJUDICE AS

13   A CONDITION TO STRIKING AN EXPERT'S REPORT THAT DISCLOSES NEW

14   THEORIES IN A PATENT CASE, AND I THINK WHAT JUDGE TIGAR WROTE

15   IN THE ADOBE CASE THAT'S CITED IN OUR BRIEF IS INSTRUCTIVE

16   HERE.  HE WROTE, "THIS COURT DECLINES TO REQUIRE A SHOWING OF

17   PREJUDICE IN THE CONTEXT OF MOTIONS TO STRIKE EVIDENCE BASED ON

18   A FAILURE TO COMPLY WITH THE PATENT LOCAL RULE BECAUSE

19   PREJUDICE IS INHERENT IN THE ASSERTION OF A NEW THEORY AFTER

20   DISCOVERY HAS CLOSED AND BECAUSE TO IMPOSE SUCH A BURDEN WOULD

21   CREATE AN INCENTIVE FOR LATE DISCLOSURE."

22        IN ANY EVENT, THE PREJUDICE TO THE DEFENDANTS HERE IS

23   QUITE REAL.  AS WE DISCUSSED LAST WEEK IN THE CONTEXT OF

24   ADAPTIX'S MOTION TO AMEND THE INFRINGEMENT CONTENTIONS, THE

25   WHOLE POINT OF HAVING INFRINGEMENT CONTENTIONS IS TO CRYSTALIZE

1    THEORIES, ALLOW DEFENDANTS TO SHAPE THEIR DISCOVERY, SUMMARY

2    JUDGMENT, AND TRIAL PLAN.

3         AND THAT'S SOMETHING THAT'S IMPORTANT IN ALL CASES, BUT

4    IT'S ESPECIALLY SO IN CASES LIKE THIS ONE WHERE, BY COURT

5    ORDER, THE CASES ARE COORDINATED FOR PRETRIAL PURPOSES.  ALL OF

6    THE DEFENDANTS HAVE TO WORK TOGETHER DURING DISCOVERY TO SERVE

7    COMMON INTERROGATORIES, APPEAR AT THE DEPOSITIONS, WORK

8    TOGETHER, AND OUR GUIDEPOST THAT WE WORK TOGETHER, OUR BIBLE,

9    IS THE INFRINGEMENT CONTENTIONS.

10        THE DEFENDANTS HAVE CRITICALLY RELIED ON THOSE CONTENTIONS

11   TO PLAN PRETRIAL STRATEGY.

12        AND WHEN WE SAW THAT REPORT, WE LOOKED AT EACH OTHER AND

13   SAID, "WHAT IS GOING ON WITH THIS REPORT?  ADAPTIX IS TRYING TO

14   BAIT AND SWITCH ITS INFRINGEMENT THEORIES."

15        IN ADDITION, THE FACT OF THE MATTER IS THAT DEFENDANTS

16   WOULD HAVE PURSUED ADDITIONAL AND DIFFERENT DISCOVERY HAD THESE

17   THEORIES BEEN KNOWN FROM THE OUTSET, OR AT LEAST THE TIME THAT

18   WE GOT THE AMENDED INFRINGEMENT CONTENTIONS AT THE END OF

19   JANUARY.

20        LET ME BE MORE CONCRETE ABOUT THAT AND GIVE SOME EXAMPLES.

21        FIRST, THE DEFENDANTS WOULD HAVE PURSUED DISCOVERY OF BASE

22   STATION MANUFACTURERS, THIRD PARTIES TO THIS MATTER, REGARDING

23   THIS NEW MODE 3 THEORY THAT THE HANDSETS SELECT SOME SUBBANDS

24   AS CANDIDATE SUBCARRIERS, BUT NOT OTHER SO-CALLED NON-CANDIDATE

25   SUBCARRIERS.

1            THE COURT:  AND WHAT WOULD THE BASE STATION

2     MANUFACTURERS TELL YOU THAT'S RELEVANT TO WHAT THE HANDSETS ARE

3     DOING?

4            MR. SELWYN:  WELL, REMEMBER, THESE CLAIMS IN THE

5     PATENT ITSELF DESCRIBE A SYSTEM, AND THE BASE STATION IS

6     SENDING SIGNALS THAT TELL THE HANDSET WHAT TO DO AND WHICH

7     MODES TO IMPLEMENT, HOW TO IMPLEMENT THEM.

8            A SIGNIFICANT PART OF THIS CASE RELATES TO THE OPERATION

9     OF THOSE BASE STATIONS, THE OPERATION OF THE CARRIER.  THE

10    HANDSET IS ONLY HALF OF THE STORY HERE AND THE INFORMATION

11    ABOUT THE OPERATION OF THE BASE STATIONS IS HELD CHIEFLY BY

12    THIRD PARTIES WHO MANUFACTURE THOSE BASE STATIONS.

13           WE WOULD HAVE ALSO SOUGHT DISCOVERY RELEVANT TO THE

14    DESIRED FOR USE LIMITATION THAT'S PRESENT IN ALL OF THE

15    ASSERTED CLAIMS, BUT NONE OF THE ASSERTED METHOD CLAIMS.

16           AND THE SUGGESTION THAT ADAPTIX MAKES THAT THESE CLAIMS

17    ARE REALLY ALL THE SAME, THAT'S JUST NOT THE CASE.  THEY ARE

18    DIFFERENT CLAIMS.  THEY HAVE DIFFERENT LIMITATIONS.  THE

19    DESIRED FOR USE LIMITATION, WHICH IS KEY TO THE APPARATUS

20    CLAIMS, IS NOT PRESENT IN ANY OF THE METHOD CLAIMS.

21           SECOND, THROUGHOUT DISCOVERY, THE DEFENDANTS FOCUSSED VERY

22    HEAVILY ON MODE 2.  WHY?  BECAUSE MODE 2 WAS ASSERTED FOR EVERY

23    ASSERTED INDEPENDENT CLAIM IN THIS CASE.  THAT WAS THE THEORY

24    THAT WE THOUGHT ADAPTIX WAS PROCEEDING UNDER, AND WE THOUGHT

25    THAT THE THEORY WITH RESPECT TO MODE 3, BECAUSE THAT'S WHAT THE

1    INFRINGEMENT CONTENTIONS SAID, WAS SO FUNDAMENTALLY FLAWED WITH

2    THE "SELECT ALL" NOTION.

3         THIRD, WHEN WE -- THE DEFENDANTS WOULD HAVE PURSUED

4    DIFFERENT DEPOSITION TESTIMONY FROM QUALCOMM REGARDING THE

5    SOURCE CODE RELATING TO THIS NEW MODE 3 THEORY.  I TOLD YOU

6    LAST WEEK ABOUT HOW APPLE HAS THE FIRMWARE.  THERE'S ANOTHER

7    SET OF CODE THAT APPLE AND THE OTHER DEFENDANTS DON'T HAVE THAT

8    QUALCOMM DOES HAVE, THAT QUALCOMM ITSELF PRODUCED, THE HTL

9    CODE.  WE WOULD HAVE SOUGHT DISCOVERY REGARDING THAT AT THE

10   DEPOSITIONS.

11        SO THE PREJUDICE TO US, WE THINK, IS CONCRETE AND CLEAR,

12   ALTHOUGH NO SHOWING OF PREJUDICE SHOULD BE REQUIRED.

13        THE COURT:  MAY I ALSO ASK, IS THE EXPERT STILL

14   OPINING THAT THE APPARATUS CLAIMS ARE INFRINGED BY MODE 2?

15        MR. SELWYN:  THAT'S A VERY GOOD QUESTION.

16        THERE IS AN INCORPORATION BY REFERENCE IN THE REPORT TO

17   THE INFRINGEMENT CONTENTIONS.  WE THINK THAT'S IMPROPER AS SET

18   FORTH IN OUR LETTER BRIEF, AND I WILL ADDRESS THAT BRIEFLY IN A

19   MOMENT.

20        TO THE EXTENT THAT INCORPORATION BY REFERENCE IS ALLOWED,

21   THEN, YES, THAT WOULD BE PART OF HIS THEORY.

22        IT ALSO APPEARS TO US THAT ADAPTIX'S POSITION IS THAT EVEN

23   ABSENT THAT INCORPORATION BY REFERENCE, ITS EXPERT IS STILL

24   PURSUING A MODE 2 THEORY, THAT THERE'S ENOUGH IN THAT REPORT SO

25   THAT THE EXPERT CAN PROCEED ON THE BASIS OF MODE 2 AS SET FORTH

1    IN ITS INFRINGEMENT CONTENTIONS.

2        SO --

3            THE COURT:  GO AHEAD.  I'M SORRY.

4            MR. SELWYN:  MY APOLOGIES.

5        SO LET ME JUST FINISH BY TURNING TO THE ISSUE OF ADAPTIX'S

6    ATTEMPT TO INCORPORATE THE INFRINGEMENT CONTENTIONS IN ITS

7    EXPERT REPORT.

8        THE PURPOSE OF AN EXPERT REPORT IS TO SET FORTH IN DETAIL

9    INFRINGEMENT OPINIONS THAT THE EXPERT WILL OFFER AT TRIAL,

10   TOGETHER WITH SUPPORTING EVIDENCE.

11       INFRINGEMENT CONTENTIONS, AS WE'VE DISCUSSED, SERVE A

12   RELATED BUT DISTINCT PURPOSE, WHICH IS TO PUT DEFENDANTS ON

13   NOTICE EARLY IN THE CASE OF THE THEORIES THAT MAY BE PURSUED.

14   IN OTHER WORDS, THE EXPERT REPORT SHOULD BE A WELL DEFINED

15   SUBSET OF WHAT'S IN CONTENTIONS.

16       ADAPTIX'S ARGUMENT THAT THE EXPERT COULD HAVE COPIED THE

17   CONTENTIONS INTO THE REPORT MISSES THE POINT AND REALLY INVERTS

18   THE RELATIONSHIP BETWEEN THE CONTENTIONS ON THE ONE HAND AND

19   THE REPORT ON THE OTHER HAND.

20       THE CASE WE CITE IN OUR BRIEF THAT STRUCK AN ATTEMPT TO

21   INCORPORATE BY REFERENCE, IT'S INTERESTING WHAT THE JUDGE SAID.

22   THAT WAS A CASE WHERE THE EXPERT REPORT SAID "I INCORPORATE BY

23   REFERENCE ALL OF THE INTERROGATORY RESPONSES," AND THE JUDGE

24   SAID, "WELL, WAIT A SECOND.  INTERROGATORY RESPONSES ARE

25   SOMETHING THAT THE ATTORNEYS PREPARE WITH THE CLIENTS AND ARE

1    SIGNED BY THE CLIENT.  THEY'RE NOT SIGNED BY THE EXPERT.  YOU

2    CAN'T JUST DO A WHOLESALE INCORPORATION," AND IT WAS STRUCK.

3         SO, TOO, HERE.  THE INFRINGEMENT CONTENTIONS ARE PREPARED

4    BY THE LAWYERS.  THEY'RE NOT SIGNED BY THE EXPERT.  THEY'RE NOT

5    SIGNED BY THE COMPANY.

6         THE INFRINGEMENT CONTENTIONS ARE INCONSISTENT IN ADDITION

7    HERE WITH THE REPORT IN MANY WAYS, AND THAT'S NOT SOMETHING, AS

8    ADAPTIX SUGGESTS, THAT CAN JUST BE SORTED OUT AT TRIAL, WE CAN

9    CROSS-EXAMINE BASED ON THOSE INCONSISTENCIES.

10        THAT WOULD REQUIRE AN EXPLANATION TO THE JURY ABOUT WHAT

11   INFRINGEMENT CONTENTIONS ARE ALL ABOUT.  THAT WOULD BE AN AWFUL

12   MESS TO HAVE TO EXPLAIN THE PATENT LOCAL RULES AND HOW THE

13   INFRINGEMENT CONTENTIONS FIT INTO THAT.

14        AND OUR BRIEF GIVES A NUMBER OF OTHER EXAMPLES, WHICH I

15   WON'T RECITE, ABOUT THE --

16        THE COURT:  WELL, AMONG OTHER THINGS, RIGHT, THE

17   INFRINGEMENT CONTENTIONS, IN TERMS OF INDIRECT INFRINGEMENT,

18   SPEAK SPECIFICALLY OF INDUCEMENT?

19        MR. SELWYN:  THEY DO.  THEY ASSERT --

20        THE COURT:  AND THE EXPERT REPORT, I BELIEVE, AS I

21   UNDERSTAND IT, SPEAKS SPECIFICALLY TO CONTRIBUTORY

22   INFRINGEMENT.

23        MR. SELWYN:  THAT'S CORRECT.  THAT'S CORRECT.

24        THE INFRINGEMENT CONTENTIONS ASSERT ADDITIONAL CLAIMS THAT

25   AREN'T IN THE EXPERT REPORT.  THERE ARE A NUMBER OF OTHER

1    DIFFERENCES.

2         AND LET ME JUST CLOSE WITH ONE FINAL DIFFERENCE, WHICH IS

3    ADAPTIX ARGUES IN A FOOTNOTE IN ITS LETTER BRIEF THAT IT STILL

4    ALLEGES INFRINGEMENT OF MODE 2.

5         AS FAR AS WE CAN TELL, THE BASIS FOR THAT IS ONE SENTENCE

6    IN THE EXPERT REPORT INCORPORATING BY REFERENCE THE

7    INFRINGEMENT CONTENTIONS.

8         YOUR HONOR WILL SEARCH IN VAIN FOR ANY MENTION OF MODE 2

9    ANYWHERE IN THE PORTION OF THE EXPERT'S REPORT THAT GOES

10   CLAIM-BY-CLAIM WITH THE INFRINGEMENT ANALYSIS.  THAT ANALYSIS

11   BEGINS AROUND PAGE 67 OF THE REPORT.  YOUR HONOR CAN LOOK AT

12   IT.  ADAPTIX CAN'T POINT YOU TO ANY PAGE WITHIN THAT

13   CLAIM-BY-CLAIM INFRINGEMENT ANALYSIS THAT EVEN USES THE WORD

14   MODE 2.

15        SO, YOUR HONOR, RESPECTFULLY, WE'RE AT A STAGE NOW WHERE

16   THE CASE SHOULD BE NARROWED.  THERE ARE STILL 14 CLAIMS THAT

17   ARE ASSERTED, FAR MORE THAN CAN ACTUALLY BE TRIED, AND TO

18   INTRODUCE -- FOR ADAPTIX TO TRY TO INTRODUCE, THROUGH ITS

19   EXPERT, AT THIS STAGE FUNDAMENTALLY DIFFERENT AND FUNDAMENTALLY

20   NEW THEORIES, EVEN BY ADAPTIX'S ADMISSION, SIGNIFICANTLY

21   PREJUDICES THE DEFENDANTS.

22        THE FIRST STEP IN THE DIRECTION OF NARROWING THIS CASE IS

23   TO STRIKE THESE TWO NEW THEORIES, HOLD ADAPTIX TO WHAT IS IN

24   ITS INFRINGEMENT CONTENTIONS, AND LIMIT ADAPTIX'S EXPERT TO

25   WHAT HAS BEEN DISCLOSED AND WHAT WE HAVE BEEN PROCEEDING ON

```
 1        THROUGHOUT THIS CASE.
 2                THE COURT:  THANK YOU, MR. SELWYN.
 3            MR. LIN, WILL YOU OR ONE OF YOUR COLLEAGUES BE PRESENTING
 4        THE ARGUMENTS THIS MORNING?
 5                MR. LIN:  ONE OF MY COLLEAGUES ON THE TELEPHONE.
 6                THE COURT:  ALL RIGHT.  THANK YOU.
 7            MR. FOSTER, MR. ERCOLINI, WHO'S GOING TO SPEAK TO THESE
 8        ISSUES?
 9                MR. FOSTER:  JAMES FOSTER, YOUR HONOR.
10                THE COURT:  GO AHEAD, MR. FOSTER.  IF YOU WOULD, SIR,
11        I'M HAVING A BIT OF TROUBLE HEARING YOU IN THE COURT, SO IF YOU
12        COULD KEEP YOUR VOICE UP, I SURE WOULD APPRECIATE IT.
13                MR. FOSTER:  CAN YOU HEAR ME NOW?
14                THE COURT:  I CAN.  GO AHEAD.
15                MR. FOSTER:  THANK YOU, YOUR HONOR.
16            FIRST OF ALL, BY WAY OF INTRODUCTION, I ONLY ENTERED MY
17        APPEARANCE IN THIS CASE SEVERAL DAYS AGO, SO I WASN'T INVOLVED
18        IN THE EARLY STAGES, AND IN PREPARING TO ARGUE THIS MOTION, I
19        ATTEMPTED TO EDUCATE MYSELF BY READING AT LEAST HALF A DOZEN
20        OPINIONS THAT YOU'VE WRITTEN ON MOTIONS SUCH AS THIS, MOTIONS
21        TO STRIKE AND MOTIONS TO ENFORCE THE LOCAL RULES, AND OF COURSE
22        I'M IMPRESSED WITH THE QUALITY OF YOUR INTELLECT.
23            AND I THINK I GOT IT.  I THINK BY READING, I CAN
24        UNDERSTAND WHAT IT IS YOU'RE TRYING TO DO IN ENFORCING LOCAL
25        RULES AND VARIOUS PROVISIONS.
```

1        AND I ALSO AM IMPRESSED WITH THE ARGUMENTS THAT COUNSEL

2    GAVE YOU.

3        BUT LET'S TAKE A LOOK AT THIS PARTICULAR SITUATION.   IN

4    JANUARY OR FEBRUARY, THERE WILL BE A TRIAL IN FRONT OF A JURY

5    WHERE THE JURY WILL HEAR IN GREAT DETAIL THE PROVISIONS OF

6    WHAT'S -- WHAT WE UNDERSTAND TO BE MODE 3 AND HOW THE PRODUCTS

7    OF DEFENDANTS COMPARE TO MODE 3.   THEY WILL HEAR THAT, I THINK

8    WE ALL AGREE, IN CONNECTION WITH THE METHOD CLAIMS.

9        SO THE ISSUE BEFORE YOUR HONOR IS, SHOULD THEY BE ASKED,

10   AT THE CLOSE OF THE TESTIMONY, WHETHER THE APPARATUS CLAIMS ARE

11   INFRINGED AS WELL, OR SHOULD THOSE ISSUES HAVE TO BE HELD OVER

12   FOR A NEW TRIAL IN ANOTHER LAWSUIT?

13       IN THIS PARTICULAR CASE, THE APPARATUS CLAIMS CORRESPOND

14   TO METHOD CLAIMS, AS WE SAID IN OUR LETTER BRIEF.   THE JURY

15   WILL HEAR ALL THAT INFORMATION.

16       WE HAVE NOT ADDED PRODUCTS TO THE CASE OR ADDED ANY, ANY

17   DIFFERENT TECHNOLOGY.

18       APPARENTLY THE PROBLEM IS -- AND I CONFESS, I WISH I

19   DIDN'T HAVE TO DEAL WITH IT -- THAT IN THE CONTENTIONS THAT

20   WERE SUBMITTED IN FEBRUARY, SOMEONE SHOULD HAVE AT LEAST PUT A

21   FOOTNOTE SAYING NOT JUST MODE 2, BUT ALSO MODE 3, OR PERHAPS

22   MORE.

23       THE QUESTION YOUR HONOR HAS TO DECIDE IS, DOES THAT MEAN

24   THE JURY CANNOT HEAR THIS?   THE TRIAL IS FIVE OR SIX MONTHS

25   FROM NOW, AND THERE ARE CERTAINLY PLENTY OF LAWYERS ON THE

1      DEFENDANTS' SIDE TO BE ABLE TO DEAL WITH IT.

2          I THINK IF YOUR HONOR RULES IT OUT, THAT CERTAINLY IS

3      WITHIN YOUR RIGHT TO DO SO.  THERE SHOULD HAVE BEEN A FOOTNOTE

4      OR SOMETHING MORE THAN THAT IN THE CONTENTIONS FOUR OR FIVE

5      MONTHS AGO.

6          AND SINCE I'M AN ADVOCATE, YOU CAN DISCOUNT ANYTHING I

7      SAY.  BUT I HAVE TO SAY THAT NEUTRAL OBSERVERS TO THE PROCESS

8      ARE GOING TO WONDER WHY THE JURY SHOULD NOT HAVE THE

9      OPPORTUNITY TO ASK THAT QUESTION.  WOULDN'T IT MAKE A LOT OF

10     SENSE TO DO THAT, AND ISN'T THIS SITUATION WHERE THE NEED TO

11     ENFORCE THE PROVISIONS OF THE LOCAL RULES THAT THE DEFENDANTS

12     ARE RELYING UPON AND ASKED TO BE IMPOSED ORIGINALLY?

13         IF YOU SO DECIDE, OF COURSE WE'LL RESPECT THAT.

14         BUT I THINK IN THIS PARTICULAR CASE, NO AMOUNT OF

15     EFFICIENCY WOULD BE AFFECTED IF A JURY COULD ANSWER THAT

16     ADDITIONAL QUESTION WITH RESPECT TO THE APPARATUS CLAIMS.

17             THE COURT:  MR. FOSTER, IF I CAN INTERRUPT YOU THERE

18     FOR JUST A MOMENT?  I WANT TO JUST GET YOUR REACTION TO ONE

19     ISSUE, OR POINT, THAT MR. SELWYN RAISED, WHICH IS THAT THE

20     APPARATUS CLAIMS, IN FACT, ARE MARKEDLY DISTINCT FROM THE

21     METHOD CLAIMS, AT LEAST IN ONE OR TWO WAYS.

22         WOULD YOU TAKE ISSUE WITH THAT?  WOULD YOU ARGUE THAT, IN

23     FACT, THEY ARE ALL -- THEY ARE ENTIRELY OVERLAPPING BUT FOR THE

24     USE OF THE SUBSCRIBER UNIT IN THE APPARATUS CLAIM?

25             MR. FOSTER:  LET ME SAY TWO THINGS, YOUR HONOR.

1          FIRST, I DIDN'T SEE HIM MAKE THAT POINT IN THE LETTER

2     BRIEF, SO I'M NOT AS PREPARED AS I WOULD PREFER TO BE HAD HE

3     ACTUALLY OUTLINED THAT IN HIS BRIEF.

4          BUT WHAT I DEFINITELY WANT TO SAY IS THAT COUNSEL HERE

5     HAVE BEEN ALL OVER THESE CLAIMS AND THIS CASE HAS BEEN AROUND

6     FOR A WHILE AND A LOT OF TIME HAS BEEN SPENT ON THE CASE.

7          TO THE EXTENT THAT THERE MAY BE DIFFERENCES BETWEEN THE

8     APPARATUS CLAIMS AND THE METHOD CLAIMS, THAT'S THE KIND OF

9     THING THAT I THINK THAT THEY SHOULD BE EASILY PREPARED TO DEAL

10    WITH.

11              THE COURT:  ALL RIGHT.  I INTERRUPTED YOU,

12    MR. FOSTER.  GO AHEAD.

13              MR. FOSTER:  MY UNDERSTANDING OF THE DIFFERENCE IS --

14    IT MAY BE INCOMPLETE -- BUT I THINK THOSE ARE DIFFERENCES IN

15    LEGAL THEORIES AND NOT DIFFERENCES IN HOW THE FACTS APPLY TO

16    THEM.

17         BUT, AGAIN, THE ISSUE WASN'T DEVELOPED IN THE LETTER BRIEF

18    AND I CAN'T RESPOND IN DETAIL ON THAT.

19         UNLESS YOUR HONOR HAS QUESTIONS, I'M GOING TO MOVE TO

20    ARGUMENT TWO.

21              THE COURT:  GO AHEAD.

22              MR. FOSTER:  ALL RIGHT.

23         ARGUMENT TWO, AGAIN, THE WAY I PREPARED FOR THIS -- AND I

24    WASN'T AROUND AT THE TIME -- BUT I READ THE MARKMAN HEARING

25    THAT YOUR HONOR CONDUCTED IN DECEMBER OF 2013 AND THE WAY I

1    UNDERSTAND THE ARGUMENT TO GO BETWEEN COUNSEL, AND YOUR HONOR

2    WAS VERY, VERY ENGAGED IN IT, COLUMN 3 OF THE '784 PATENT

3    DESCRIBES VARIOUS EMBODIMENTS OF THE INVENTION.  THERE'S NO

4    REAL FACTUAL DISPUTE AS TO HOW DEFENDANTS' PRODUCTS OPERATE AND

5    HOW VARIOUS MODES IN THE STANDARD TO OPERATE, AND WHAT HAPPENS

6    IS THAT THE HANDSET, THE U.E.S, THEY DEVELOP AND REPORT ON ALL

7    OF THE SUBBANDS AND PROVIDE CERTAIN CQI OR OTHER TECHNICAL

8    FEEDBACK WITH RESPECT TO THE SUBBANDS, AT LEAST IN MODE 3.

9         AND SO THE LIVELY ARGUMENT AT THE MARKMAN HEARING IS,

10   WELL, DO THE CLAIMS COVER THAT?  AND THEN THE ARGUMENT FOCUSSED

11   ON THE LANGUAGE LOOKING AT THE SUBBANDS, AND AS I RECALL, YOUR

12   HONOR WAS VERY VIGOROUS IN SAYING, WELL, LOOK, THERE IS THIS

13   EMBODIMENT IN CLAIM 3 WHERE THEY DO REPORT EVERYTHING AND WHY

14   DOESN'T THE CLAIM COVER THAT, ET CETERA, ET CETERA.

15        SO THE PARTIES ADDRESSED THAT ISSUE, AND THE POSITION THAT

16   WE TOOK THEN, AND WE STILL TAKE IN OUR CONTENTIONS, IS THAT YOU

17   HAVE THE "SELECT ALL" OPTION.  IF YOU'RE SELECTING ALL, YOU ARE

18   STILL SELECTING, AT LEAST IF YOU'RE, IF YOU'RE PROVIDING

19   FEEDBACK WHICH DIFFERENTIATES BETWEEN THE CARRIERS.

20        NOW, IN -- RECENTLY, AS WE APPROACH TRIAL AND APPROACH THE

21   SITUATION WHERE DISPOSITIVE MOTIONS ARE GOING TO BE FILED, WE

22   ANTICIPATED THAT DEFENDANTS WILL TAKE THE POSITION AND THEY

23   WILL HAVE THEIR EXPERT ISSUE A REPORT IN A COUPLE WEEKS SAYING

24   THAT THEY THINK THE CLAIMS SHOULD BE, SHOULD BE CONSTRUED OR

25   INTERPRETED OR VIEWED AS NOT ALLOWING THE "SELECT ALL" OPTION,

```
 1    AND THEREFORE, IF YOU REPORT ON -- IF YOU REPORT INFORMATION ON

 2    ALL OF THE SUBBANDS, YOU'RE NOT WITHIN THE TERMS OF THE CLAIM.

 3        SO I LOOKED AT YOUR HONOR'S CLAIM CONSTRUCTION, AND AS WE

 4    SAID IN OUR LETTER BRIEF, WE DON'T -- THIS IS NOT AT ALL

 5    CRITICAL.  WE DO NOT SEE ANYTHING IN THE CLAIM CONSTRUCTION

 6    THAT WOULD PRESENT -- PREVENT DEFENDANTS FROM MAKING THAT

 7    ARGUMENT IN THEIR EXPERT REPORT AND IN THEIR DISCLOSED MODE, OR

 8    EVEN AT TRIAL.

 9        SO THE ISSUE WE HAD TO DEAL WITH IS, WELL, IF THEY'RE

10    GOING TO TAKE THAT POSITION AND IF THE COURT MOVES IN THAT

11    DIRECTION, DO WE HAVE A BACKUP THEORY?

12        AND THE BACKUP THEORY IS WHAT YOU SEE IN THE EXPERT'S

13    REPORT.  WE DON'T NEED THAT IF THE CONSTRUCTION IS, OR THE

14    THEORY IS THAT THE "SELECT ALL" OPTION -- THE CLAIM COVERS THE

15    "SELECT ALL" OPTION.

16        IF YOUR HONOR RULES FROM WHAT HAPPENED, WHAT WE'VE DONE SO

17    FAR AND RULES OUT THAT THEORY, THEN I THINK WE SHOULD BE ABLE

18    TO DO THE FALLBACK ARGUMENT.

19        THE REASON IT'S IN THE EXPERT REPORT NOW IS THAT WE DIDN'T

20    WANT TO WAIT TO SEE WHAT THEIR EXPERT HAD TO SAY AND THEN HAVE

21    TO TRY TO DO A REBUTTAL TO A REBUTTAL REPORT.  WE THOUGHT WE'D

22    GET IT IN EARLY, AND WE'LL OBVIOUSLY STIR THE POT BY DOING IT,

23    BUT HERE WE ARE.

24        THE FINAL COMMENT I WOULD MAKE AS I LOOK AT -- AS I LOOK

25    AT WHAT YOU SEE IN THE EXPERT REPORT, AT THE MARKMAN HEARING,
```

1   THERE WAS DISCUSSION ABOUT WHETHER COLUMN 3 OF THE CLAIM WOULD

2   COVER REPORTING ON ALL OF THE MODES AND THEN ORDERING THEM, SO

3   WHAT DR. CALOYANNIDES IS SAYING IN HIS EXPERT REPORT IS THIS IS

4   HOW THE ORDERING IS DONE, AND IT GIVES YOU DETAILS ON THAT.

5        SO THERE YOU HAVE IT.

6        THE COURT:  MR. FOSTER, ONE QUESTION I HAVE ABOUT

7   THIS WHAT I'LL CALL ANTICIPATORY THEORY THAT YOUR EXPERT OFFERS

8   IN HIS REPORT, IT SEEMS TO ME THAT, AT THIS STAGE ANYWAY, THE

9   COURT HAS TO PRESUME THAT THE CONSTRUCTION THAT I ISSUED BACK

10   IN DECEMBER IS THE CONSTRUCTION THAT WILL APPLY THROUGHOUT THE

11   REMAINDER OF THIS CASE, INCLUDING AT TRIAL.

12        I ALSO HAVE TO KEEP IN MIND, I THINK, THAT THIS WAS A

13   CONSTRUCTION, I BELIEVE, THAT ONE OF YOUR COLLEAGUES URGED ME

14   TO ADOPT.

15        SO WITH THAT HISTORY IN MIND, WOULD YOU AT LEAST CONCEDE

16   THAT THIS ANTICIPATORY THEORY THAT YOUR EXPERT IS OFFERING IS

17   INCONSISTENT WITH THE CONTENTIONS THAT WERE DISCLOSED, OR

18   SERVED, WHICH MADE NO MENTION OF ANY SUCH INTERPRETATION?

19        MR. FOSTER:  I WILL READILY CONCEDE THAT, YOUR HONOR.

20        AND IF YOU'LL ALLOW ME TO MAKE ONE STATEMENT?

21        THE COURT:  GO AHEAD.

22        MR. FOSTER:  I THINK IT WAS IN OUR LETTER BRIEF.  IT

23   INVOLVED A LOT OF CASES AND WHAT HAPPENED IN THEM.  I MEAN,

24   SOME JUDGES DO EARLY MARKMANS, SOME DO LATE MARKMANS, AND THOSE

25   WHO DO EARLY MARKMANS END UP ADDING NUANCE AS THE CASE GOES ON,

1     AND SOMETIMES THE NUANCE COMES IN RESPONSE TO MOTIONS,

2     DISPOSITIVE MOTIONS.

3          I KNOW HERE WHEN YOU ISSUED YOUR CLAIM CONSTRUCTION, YOU

4     MORE THAN HAD -- SAYING THAT IF THERE WERE DISPOSITIVE MOTIONS

5     LATER, YOU WOULD GO INTO MORE DETAIL THAN YOU DID IN YOUR

6     MARKMAN SITUATION.

7          SO AS LONG AS -- AS LONG AS WE CAN CONTINUE TO ARGUE --

8     AND IF THE COURT DOES NOT ALLOW OUR THEORY THAT SELECTING --

9     THAT THE CLAIMS INCLUDES "SELECTING ALL," THEN WE DO NOT NEED

10    THE ADDITIONAL THEORY, OR THE BACKUP THEORY.

11          THE COURT:  ALL RIGHT.  I THINK I UNDERSTAND YOUR

12    POSITION, MR. FOSTER.  ANY OTHER POINT YOU WISH TO RAISE, SIR?

13          MR. FOSTER:  ON THAT POINT, NO.

14     ON THE THIRD POINT, WHICH HAD TO DO WITH THE, THE

15    INFRINGEMENT CONTENTIONS, FOR BETTER OR FOR WORSE, THE WAY THE

16    RULES ARE SET UP, IN YOUR COURT AND IN A LOT OF OTHER COURTS,

17    IS THAT YOU CANNOT ADD THINGS AS YOU GO ALONG AS WE'RE NOW --

18    AS WE'VE BEEN DISCUSSING FOR A WHILE NOW, BUT YOU CAN ALWAYS

19    DROP THINGS.

20          AND SO THE TENDENCY AMONG PARTIES IS TO, WHENEVER THEY

21    HAVE SOMETHING NEW, TO INCLUDE EVERYTHING AND PUT OFF UNTIL --

22    THAT THEY'VE ALREADY DONE OR THAT THEY COULD DO AND THEN PUT

23    OFF TO A LATER DATE DROPPING THINGS AS THEY APPROACH TRIAL, AND

24    IN DR. CALOYANNIDES'S REPORT, HE INCLUDED THE INFRINGEMENT

25    CONTENTIONS SO AS NOT TO WAIVE ANY OF THOSE THEORIES, AND IN

1   OUR LETTER BRIEF, WE RESPONDED BY SAYING, OKAY, WE HAVE DROPPED

2   PARTS OF OUR CASE AND OTHERS WE'VE DROPPED CERTAIN CLAIMS AND

3   DROPPED CERTAIN THEORIES AND THE COURT HAS ORDERED OUT THE

4   CONTRIBUTORY INFRINGEMENT THEORY.

5        SO YOU NO LONGER HAVE TO DEAL WITH THOSE THINGS.

6        BUT WE CONTINUE TO ASSERT ALL OF THOSE THEORIES WHICH HAVE

7   NOT BEEN DROPPED, AND I HAVE NOT SEEN ANYTHING, FROM THIS COURT

8   OR ELSEWHERE, WHICH SAYS THAT'S AN IMPROPER WAY TO PROCEED, SO

9   WE'D OBVIOUSLY BE VERY MUCH PREJUDICED IF WE WERE NOT PERMITTED

10  TO DO THAT AND HAD TO GO DOWN SOME OTHER ROUTE.

11        THE COURT:  ALL RIGHT, MR. FOSTER.  I THINK I HAVE

12  IT.  ANY OTHER POINTS YOU WISH TO RAISE ON ANY OF THE THREE

13  ISSUES THAT YOU'VE IDENTIFIED?

14        MR. FOSTER:  THAT'S IT, YOUR HONOR.

15        THE COURT:  THANK YOU, MR. FOSTER.

16     MR. SELWYN, I'LL GIVE YOU A BRIEF REBUTTAL IF YOU WOULD

17  LIKE IT.

18        MR. SELWYN:  YES.  JUST VERY BRIEFLY, ONE POINT IN

19  REBUTTAL, WHICH IS THAT THE DEFENDANTS ARE NOT ASKING HERE FOR

20  AN UNFAIR OR AN UNUSUAL RESULT.  CASE AFTER CASE IS CLEAR THAT

21  NEW THEORIES MAY NOT BE INTRODUCED THROUGH AN EXPERT REPORT,

22  AND YOU'VE JUST HEARD AGAIN AN ADMISSION THAT THESE ARE TWO NEW

23  THEORIES, THE FIRST NEW THEORY ABOUT THE ASSERTION OF MODE 3

24  AGAINST THE APPARATUS CLAIMS, THE SECOND NEW THEORY THE NEW

25  FLAVOR, THE SELECTING SOME SUBBANDS AS SATISFYING THE

1    "SELECTING" TERM FOR MODE 3.  TWO INDISPUTABLY NEW THEORIES.

2         WE'RE NOT ASKING FOR AN UNUSUAL OR UNFAIR RESULT.

3         WE ARE DEALING HERE WITH A PLAINTIFF THAT IS VERY

4    SOPHISTICATED.  IT'S AN ACACIA ENTITY.  THEY HAVE BROUGHT 50

5    CASES IN THE FEDERAL COURTS.  THEY SHOULD BE HELD TO THE SAME

6    STANDARDS OF FOLLOWING THE PATENT LOCAL RULES AS ANYBODY ELSE.

7         THANK YOU.

8              THE COURT:  ALL RIGHT.  I THINK I HAVE THE ISSUES,

9    COUNSEL.  THANK YOU.

10        I'M GOING TO TAKE THIS MATTER UNDER SUBMISSION.  I WANT TO

11   GIVE JUST SOME FURTHER THOUGHTS TO THE POINTS THAT WERE RAISED

12   IN ORAL ARGUMENT THIS MORNING.

13        I'LL GET AN ORDER OUT QUICKLY.  THIS WILL NOT BE A THESIS.

14   IT'LL BE MUCH MORE OF A SUMMARY.  BUT I DO WANT TO GIVE A FEW

15   FURTHER THOUGHTS TO THIS BEFORE I FORMALLY RULE.

16        ARE THERE ANY OTHER ISSUES THAT I CAN HELP YOU WITH THIS

17   MORNING WHILE WE'RE ALL HERE TOGETHER?  ANYTHING AT ALL?  I'M

18   NOT LOOKING FOR WORK, BUT I'LL TAKE IT UP.

19        IF NOT, I'LL WISH YOU ALL A GOOD AFTERNOON.

20             MR. SELWYN:  THANK YOU, YOUR HONOR.

21             MR. FOSTER:  THANK YOU, YOUR HONOR.

22        (THE PROCEEDINGS WERE CONCLUDED AT 11:00 A.M.)

23

24

25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8   STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9   280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10  CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15

16  _____
    LEE-ANNE SHORTRIDGE, CSR, CRR
17  CERTIFICATE NUMBER 9595

18       DATED:  AUGUST 12, 2014

19

20

21

22

23

24

25