UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADAPTIX, INC., <br><br>　　　　　　Plaintiff, <br>　　v. <br><br>ASUSTEK COMPUTER INC., et al., <br><br>　　　　　　Defendants. | Case No. 5:14-cv-03112-PSG <br><br>**ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT** <br><br>(Re: Docket No. 106) |

In this patent infringement suit, Defendants ASUSTek and Asus Computer International thought they had found their way out. But it turns out that Defendants and Plaintiff Adaptix, Inc. had a difference of opinion as to whether a settlement had in fact been reached.[1] ASUS now moves to enforce.[2] As explained below, the motion is GRANTED.

**I.**

On December 25, 2014, in the midst of discussions between the parties to settle this case, Adaptix asked ASUS in an email: "[a]t a minimum, can you please confirm that we are targeting getting this deal done this year (which was a condition of our offer)?"[3] Five days later, Adaptix summarized to ASUS the remaining terms for negotiation and stated, "we will not agree to signing

---

[1] See Docket No. 86-4 at 2-3.

[2] See Docket No. 86-4.

[3] See Docket No. 97-3 at 1.

1

Case No. 5:14-cv-03112-PSG
ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

this particular deal beyond 2014."[4] ASUS wrote back that day, attaching the final agreement to the email and requesting that Adaptix execute the copies.[5]

In response, Adaptix explicitly stated that it needed to receive the signed copy of the agreement from Defendants by the next day—December 31— or it would withdraw the offer.[6] Early on the 31st, ASUS expressed that it could not sign the agreement before the year's end, given that the office was closed for the next four days for a Taiwanese holiday.[7] ASUS further expressed confusion as to why Adaptix so urgently required ASUS's execution of the final agreement.[8] Three hours later, Adaptix sent ASUS another email, complete with an attachment of a copy of the final agreement signed by Adaptix.[9] In this email, Adaptix stated that it "made just a few minor changes" to the agreement and that it "assumed these changes would be acceptable."[10] Additionally, Adaptix asked ASUS to forward a signed copy of the agreement "as soon as possible." There was no reference to the "requirement" that ASUS sign the final agreement before the end of the day.[11] Later that day, Adaptix wrote "we do need a fully executed electronic signature page (or pages) tomorrow or the offer is withdrawn."[12] On January 1, 2015, Adaptix asserted that there was no agreement between the parties and that if ASUS still wanted to settle, the settlement amount would increase—by ▮▮▮.[13]

---

[4] *See* Docket No. 97-4 at 1.

[5] *See* Docket No. 106-2 at 1. Later that day, ASUS followed up stating "[w]hen I receive the ACI (ASUS) executed original, I will process the ASUSTek signature step immediately. And then I will forward a PDF of the fully executed signature page to you at once." Docket No. 97-5 at 1.

[6] *See* Docket No. 97-6 at 1.

[7] *See* Docket No. 97-7 at 1.

[8] *See id.*

[9] *See* Docket No. 106-3 at 1.

[10] *Id.*

[11] *Id.*

[12] *See* Docket No. 97-8 at 1.

[13] *See* Docket No. 86-4 at 3.

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338. The parties further consent to the jurisdiction of the undersigned under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[14]

## III.

"A district court has the equitable power to enforce summarily an agreement to settle a case pending before it."[15] Once a settlement has been reached in a pending action, any party to the agreement may bring a motion to enforce it.[16] For the purpose of interpretation, settlement agreements are treated like contracts.[17] Local law applies to a determination regarding the scope of the settlement even when the underlying cause of action is federal.[18] Under California law, the parties' intent determines the meaning of the contract—this inquiry is objective and "manifested in the agreement and by surrounding conduct" instead of the parties' subjective beliefs.[19] In other words, "unexpressed intent is irrelevant to the [c]ourt's task in interpreting the contract."[20]

At bottom, there are two requirements for a settlement agreement to be enforced: the settlement must be a complete agreement,[21] and the parties must have either agreed to the settlement terms or authorized respective counsel to settle the dispute.[22] The dispute as presented focuses on this latter requirement: the parties disagree about whether a binding settlement agreement even exists.

---

[14] *See* Docket Nos. 52-55.

[15] *In re City of Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994).

[16] *See Doi v. Halekulani Corp.*, 276 F.3d 1131, 1135 (9th Cir. 2002).

[17] *See Adams v. Johns-Manville Corp.*, 962 F.2d 853, 856 (9th Cir. 1992).

[18] *See United Commercial Ins. v. Paymaster Corp.*, 962 F.2d 853, 857 (9th Cir. 1992).

[19] *Ebates Performance Mktg. Inc. v. Integral Techs. Inc.*, Case No. 12-cv-06488, 2013 WL 4427115, at *2 (N.D. Cal. Aug. 13, 2013) (citations omitted).

[20] *Id.*

[21] *See Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987).

[22] *See Harrop v. W. Airlines, Inc.*, 550 F.2d 1144-45 (9th Cir. 1977).

Within the four corners of the final agreement itself, there is no mention that ASUS must sign the agreement before the end of 2014.[23] Under California law, the existence of an integration clause is a key factor that shows that the parties intended their writing to serve as the exclusive embodiment of their agreement.[24] "This type of clause has been held conclusive on the issue of integration, so that parol evidence to show that the parties did not intend the writing to constitute the sole agreement will be excluded."[25] Section 9.9 of the agreement ████████████████████████████████████████████████████████████████████████████████████████████[26] If Adaptix intended that execution of the agreement by the close of 2014 to be a material term, the term should have been included in the agreement—not thrown in a last-minute email as an afterthought.

Even if the parties' emails were considered (i.e. if the ████████ did not supersede the emails), when Adaptix sent its executed agreement to ASUS on December 31, 2014, Adaptix did not include in its accompanying email any precondition or requirement that both parties were required to sign the agreement before January 1, 2015—rather, Adaptix communicated to ASUS that it was merely required to forward a signed copy of the agreement "as soon as possible."[27]

Both parties extensively discuss *Panagotacos v. Bank of America*.[28] In *Panagotacos*, the court was faced with the issue of the enforceability of a contract regarding the sale of a house.[29]

---

[23] *See* Docket No. 111-6.

[24] *See Grey v. Am. Mgmt. Servs.*, 204 Cal. App. 4th 803, 807 (Cal. Ct. App. 2012) (discussing Cal. Civ. Proc. Code § 1856(d)) ("The crucial issue in determining whether there has been an integration is whether the parties intended their writing to serve as the exclusive embodiment of their agreement. The instrument itself may help to resolve that issue.)".

[25] *Id.* (citing 2 Witkin, Cal. Evid. § 70 (4th ed. 2000)).

[26] Docket No. 111-6.

[27] Docket No. 106-3 at 1. California law provides that "[w]here the validity of the agreement is the fact in dispute," the parol evidence rule "does not exclude evidence relevant to that issue." Cal. Civ. Proc. Code § 1856(f).

[28] 60 Cal. App. 4th 851 (Cal. Ct. App. 1998).

Because the buyers had, in their letter to the seller, included additional material terms—an extension of the payment deadline and the location of the payment—the court held that the proposal was effectively a counteroffer and there was no enforceable contract.[30] *Panagotacos* is distinguishable because the sellers in *Panagotacos* made clear over the course of three months that the buyer's failure to agree to the additional terms would result in the offer of the property to other interested buyers.[31] In contrast, Adaptix was vague at best over the course of settlement negotiations that it considered execution by the end of 2014 an additional term. And while it tried to clarify its position at the eleventh hour, ASUS had no reason to believe that such a condition would be fatal to the agreement's conclusion. For example, Adaptix's December 25 email—"[a]t a minimum, can you please confirm that we are targeting getting this deal done this year (which was a condition of our offer)"—neither expressly nor implicitly requires ASUS to also sign the agreement prior to the end of 2014.[32]

And while it is true that the final agreement attached to Adaptix's December 31 email contained several changes, the changes were not significant such to bring them within the realm of *Panagotacos*. Under California law, mere presence and correction of typographical errors in an agreement do not prevent the formation of a contract.[33] Adaptix itself referred to the changes as "minor."[34] On this record, the court cannot say that the purported signature requirement nullifies the agreement.

---

[29] *See id.* at 855.

[30] *See id.*

[31] *See id.* at 856.

[32] *See* Docket No. 97-3 at 1.

[33] *See Schreiber v. Hooker*, 114 Cal. App. 2d 634, 638-39 (Cal. Ct. App. 1952).

[34] Specifically, Adaptix made these changes, including using the word "means" in Section 1.12, deleting an extra period in Section 1.12 and fixing a cross reference hyperlink in Section 9.2. *See* Docket No. 106-3 at 1.

In the end, Adaptix signed the settlement agreement. Parties must be held to the agreements they make.

**SO ORDERED.**

Dated: April 24, 2015

PAUL S. GREWAL
United States Magistrate Judge